**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NATHANIEL ORTIZ,<br>*Plaintiff* | §<br>§ | |
| | § | |
| v. | § | Case No. SA-25-CV-01432-XR |
| | § | |
| ATX FUNDING,<br>*Defendant* | §<br>§ | |

**ORDER ON MOTION FOR PARTIAL DISMISSAL**

On this date, the Court considered Defendant's motion to dismiss (ECF No. 31), Plaintiff's response (ECF No. 32), and Defendant's reply (ECF No. 34). After careful consideration, the Court issues the following order.

**BACKGROUND**

Plaintiff Nathaniel Ortiz, proceeding *pro se*, filed this action against his former employer, Defendant ATX Funding d/b/a "MobyCap", alleging claims of employment discrimination under Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, and for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Fourth and Fifth Amendments to the Constitution. *See* ECF No. 28.

Plaintiff worked at MobyCap as a Funding Specialist from approximately July 19, 2024, to March 7, 2025. After absences from work due to transportation issues caused by a car accident, Plaintiff was accused of having a "drug problem" and terminated on January 29, 2025 (despite his offer to take a drug test), briefly reinstated under a restrictive Performance Plan with a drug-related clause, and terminated again on March 7, 2025.

In addition to alleging instances of harassment based on his race, age, religion, and perceived disability, the operative pleading states "upon information and belief and based on circumstantial evidence" that:

> Defendant, through an association-in-fact enterprise, engaged in a pattern of racketeering activity (including potential predicate acts such as wire fraud, money laundering, or obstruction), which proximately caused Plaintiff's injury, including termination after he reported suspicious activities. Plaintiff seeks discovery to further substantiate these allegations.

ECF No. 28 ¶ 20. Plaintiff alleges that he learned from two co-workers that "[MobyCap's owner] had previously served a federal prison sentence and allegedly maintained connections to organized crime figures, including individuals associated with the Gambino crime family."[1] *Id.* ¶ 22. Plaintiff later confronted the owner about these alleged criminal associations, but he denied involvement in any criminal activity after his release from prison. *Id.* ¶ 24.

Although it is not clear from the Second Amended Complaint, Plaintiff appears to allege—in support of either his RICO claims, his constitutional claims, or both—that MobyCap is either being investigated by or cooperating with law enforcement officers of some kind. During his employment, Plaintiff allegedly communicated with at least two individuals who presented themselves as prospective clients and later disclosed law enforcement affiliations—one, a former police officer and the other, a detective. *Id.* ¶¶ 26–29. Following those disclosures, the individuals ceased communications with Plaintiff and did not pursue any business relationship. *Id.* ¶ 30. He reported these incidents to his manager, Chad Crandall, who said he would look into the matter,

---

[1] Plaintiff appears to repeatedly conflate the defendant to this case—MobyCap—with its purported non-party owner—Roberto Mangiarano. *See, e.g.*, ECF No. 28 ¶ 22 ("*Defendant* had previously served a federal prison sentence[.]") (emphasis added); *id.* ¶ 24 ("Plaintiff subsequently confronted *Defendant* regarding the alleged criminal associations. *Defendant* denied any involvement in criminal activity following his release from prison.") (emphasis added).

In the interest of clarity and liberally construing Plaintiff's pro se pleading, the Court substitutes "MobyCap's owner" for "Defendant" where appropriate for the purpose of evaluating the Defendant's motion. It is worth noting, however, that in its answer to Plaintiff's first amended complaint, Defendant denies that Mangiarano is the "owner/controller" of MobyCap. *See* ECF No. 15 ¶ 8.

but Plaintiff was "never informed of any findings, explanation, investigation, or resolution concerning either incident." *Id.* ¶¶ 31–34.

"Based upon the repeated contacts by individuals claiming law-enforcement affiliations, the information Plaintiff had received regarding Defendant's alleged history, and management's failure to provide any explanation, Plaintiff became concerned that Defendant or persons associated with Defendant may have been the subject of law-enforcement scrutiny or investigation" and that "his [own] communications may have been monitored." *Id.* ¶¶ 35, 36. Presumably based on this theoretical monitoring activity, Plaintiff alleges that, in "coordination with federal authorities," Defendant violated his Fourth and Fifth amendment constitutional rights by "acting under color of federal law" and "subjecting Plaintiff to unreasonable searches (phone hacking) and due process violations." ECF No. 28 ¶ 21.

In sum, Plaintiff asserts that circumstantial evidence, "including the owner's prior federal imprisonment history, the nature of high-interest lending operations, observed deceptive practices, contacts with individuals later revealed as law enforcement, and other indicators, potential involvement in illicit activities that may support a RICO claim upon further discovery." *Id.* ¶ 15. As further circumstantial evidence, Plaintiff points to "Defendant's [operating] name 'Moby Capital,' which Plaintiff believed closely resembled the phrase 'Mob Capital,'" and an instance in which MobyCap's owner failed to respond to a post-termination text message in which Plaintiff referred to him as "Mr. Gambino." *Id.* ¶¶ 25, 39. The next day, Plaintiff allegedly became aware of "public reports concerning law-enforcement actions involving alleged members and associates of the Gambino crime family," which "contributed to Plaintiff's belief that the unusual events he experienced during his employment may have been connected to broader law-enforcement activities." *Id.* ¶¶ 41–42.

Defendant has moved to dismiss Plaintiff's claims for RICO and constitutional violation with prejudice for failure to state a claim under Rule 12(b)(6). *See* ECF No. 31. MobyCap argues that Plaintiff's RICO claims fails because he has not plausibly alleged any predicate acts or related injury and his constitutional claims fail because MobyCap is a private actor. ECF No. 31. The Court agrees.

## DISCUSSION[2]

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. S.A., L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

---

[2] Ortiz is proceeding *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

RICO claims resting on allegations of fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Tel-Phonic Serv., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. "Directly put, the who, what, when, and where must be laid out." *Id.* at 178.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); ; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II. Analysis

### A. RICO Claims

Plaintiff alleges that MobyCap, through an association-in-fact enterprise, engaged in a pattern of racketeering activity in violation of the RICO Act. ECF No. 28 ¶ 20.

Section 1962(c) of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). Section 1964, in turn, allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to file a lawsuit in order to recover "threefold the damages he sustains and the cost of the suit[.]" 18 U.S.C. § 1964(c).

To prove a violation of § 1962(c), a plaintiff must establish that there has been (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

An "enterprise" is broadly defined by the Act, and it "can be either a legal entity or an association-in-fact." 18 U.S.C. § 1961(4). The Supreme Court requires that, at minimum, the association-in-fact enterprise must have: (1) a purpose, (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 944, 946 (2009). To be subject to liability under § 1962(c), "the RICO person [must] be distinct from the RICO enterprise." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445 (5th Cir. 2000); *see also Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) ("[A] RICO person cannot employ or associate with himself under [§ 1962(c)].").

"Racketeering activity" consists of two or more predicate offenses, defined by the statute to include acts violating federal wire or mail fraud statutes.[3] 18 U.S.C. § 1961. To establish the requisite *pattern* of racketeering activity for a RICO violation, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Rule 9(b)'s heightened standard "requires that the plaintiff specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud." *Barnard v. Bank of Am., N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *1 (S.D. Tex. Nov. 15, 2005) (citation omitted).

Plaintiff has failed to state a RICO claim, which must be pled with "specific facts, not mere conclusory allegations, which establish" the elements of a claim under the statute. *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). He does not identify an enterprise with which Defendant is purportedly associated, how Defendant allegedly participated in the enterprise's affairs, or any predicate acts of wire or mail fraud that could establish a pattern of racketeering activity. Instead, Plaintiff speculates that MobyCap's *owner* has a relationship with the "Gambino crime family," suggests that MobyCap may be subject to or cooperating with some kind of investigation, and vaguely references "public reports concerning law enforcement actions." ECF No. 28 ¶¶ 22–41. Plaintiff does not identify a single instance of alleged wire or mail fraud in which Defendant purportedly participated, let alone describe such fraud with the particularity required under Rule 9(b). Instead, he merely asserts "upon information and belief" that Defendant "engaged in a pattern of racketeering activity (including *potential* predicate acts such as wire fraud, money laundering, or obstruction)." *Id.* ¶ 20 (emphasis added).

---

[3] To state a claim for wire fraud, plaintiffs must allege (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations or promises, (2) defendant participated in the scheme with specific intent to defraud and (3) defendants used the mails or wires to execute the scheme. *United States v. Zander*, 794 F.3d 12200, 1226 (10th Cir. 2015).

Because Plaintiff has not adequately pled a predicate act of RICO activity, he cannot establish the requisite nexus between Defendant's alleged RICO activity and his injury. "To state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quotation marks omitted). Courts have consistently concluded that "the injuries flowing from the employer's retaliatory conduct [are] not sufficiently proximate to the alleged RICO violations to confer standing upon the employee." *Jones v. Enter. Rent A Car Co. of Tex.*, 187 F. Supp. 2d 670, 677 (S.D. Tex. 2002) (collecting cases); *see, e.g.*, *Beck v. Prupis*, 529 U.S. 494, 499 (2000) (holding that CEO allegedly fired for reporting misconduct to regulators could not assert a RICO claim because his termination was not itself an act of racketeering). Thus, even assuming for the sake of argument that Plaintiff had adequately alleged a RICO violation, he does not have standing under RICO because his termination was not proximately caused by an act of mail or wire fraud.

In sum, Plaintiff has failed to state a RICO claim.

**B. Plaintiff cannot state a constitutional claim against a private actor.**

Ortiz claims that MobyCap violated his Fourth and Fifth amendment constitutional rights by "acting under color of federal law" and "subjecting Plaintiff to unreasonable searches (phone hacking) and due process violations." ECF No. 28 ¶ 21. While Plaintiff asserts that Defendant violated his constitutional rights while acting under color of *federal* law (i.e., a *Bivens* claim), the Court also considers—given Plaintiff's suggestion that Defendant was somehow cooperating with a police officer or detective, ECF No. 28 ¶ 29—whether Plaintiff's allegations could support a theory that MobyCap was acting under color of *state* law (i.e., a § 1983 claim). Plaintiff's claims fail under either theory.

The Supreme Court recognized an implied cause of action for violations of the Fourth Amendment by federal agents in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Since *Bivens* was decided in 1971, the Supreme Court has extended the *Bivens* remedy on only two occasions: once for a claim of general discrimination under the Fifth Amendment (*see Davis v. Passman*, 442 U.S. 228, 248–49 (1979)) and once for inadequate prison medical care under the Eighth Amendment (*see Carlson v. Green*, 446 U.S. 14, 18–23 (1980)). In any event, private actors like Defendant are not subject to liability under *Bivens*, "which is concerned solely with deterring the unconstitutional acts of individual *officers*." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (emphasis added).

Any claim under § 1983 would likewise fail because MobyCap is not a state actor. To state a claim under § 1983, (1) the conduct of which the plaintiff complains must be committed by a person acting under color of state law; and (2) the conduct complained of must deprive the plaintiff of a right secured by the Constitution or federal statute. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017); *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014).

While private individuals and entities are generally not considered state actors subject to suit under § 1983, their conduct may be deemed state action when it is "fairly attributable to the State." *Moody*, 868 F.3d at 352. To determine whether a defendant's conduct may be "fairly attributable to the state," and thereby subject to potential liability under § 1983, the Court must first identify "the specific conduct of which the plaintiff complains." *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50–51 (1999)).

Plaintiff contends that MobyCap "may have been the subject of law-enforcement scrutiny or investigation" and that "his [own] communications may have been monitored." ECF No. 28 ¶¶ 35, 36. The Court cannot reasonably infer from the possibility that MobyCap is itself being investigated that it is engaging in any conduct that is "fairly attributable to the state," let alone conduct that has violated Plaintiff's constitutional rights. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 548–49 (5th Cir. 2005) ("[W]e will not strain to find inferences favorable to the plaintiff.") (citation and quotations omitted).

For these reasons, Plaintiff's constitutional claims must be dismissed.

**C. Plaintiff is not entitled to discovery or further amendment.**

In response to Defendant's motion, Plaintiff asserts that he should be permitted to complete discovery and further amend his complaint. ECF No. 32.[4]

But discovery cannot be used as a fishing expedition to find a claim, as Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. Rather, the Federal Rules require a plaintiff to plead a plausible claim *before* proceeding to discovery.

Further leave to amend is not warranted, for two reasons. First, Plaintiff's "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C.

[4] Plaintiff attached to his response records of Mangiarano's 2005 release order following his prison term and a FINRA report reflecting that Mangiarano is barred from, *inter alia*, "association with any broker or dealer" and "participating in any offering of penny stock." ECF No. 32 at 8, 18. Setting aside that these extra-pleading materials are not properly before the Court on a motion to dismiss, *see Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), the Court cannot reasonably infer from records supporting Mangiarano's 20-year old criminal history that MobyCap is engaged in any wrongdoing, let alone racketeering activities that have injured Plaintiff. In short, the records do nothing to cure the deficiencies in the operative pleading.

Cir. 1993).[5] More importantly, Plaintiff has already amended his complaint twice, including a more recent amendment focused on ostensibly providing additional detail related to his RICO and Constitutional claims. Even so, his allegations are speculative and facially implausible. He lacks standing to assert a RICO claim, and Defendant, as a private actor, cannot be held liable for constitutional violations. Granting Plaintiff leave to further amend his pleadings would be futile, and his claims must be dismissed with prejudice. *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a district court does not err in dismissing a *pro se* complaint with prejudice if the court determines the plaintiff has alleged his best case).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 31) is **GRANTED**. Plaintiff's claims for violations of the RICO Act and his Fourth and Fifth amendment rights are **DISMISSED WITH PREJUDICE**. All other claims remain pending.

The Clerk is **DIRECTED** to mail a copy of this order to Nathaniel Ortiz, 241 Kipper Ave. Cibolo, TX 78108.

It is so **ORDERED**.

**SIGNED** this 22nd day of October, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

[5] *See, e.g.*, *Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018) ("At the end of their opposition to the motion to dismiss, Appellants stated that they 'should be given an opportunity to amend . . . to further state any claims considered deficient' and 'to plead further' Richard's claims. These statements are insufficient to constitute a request for leave to amend under Rule 15(a).").